# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KIM A. THOMPSON<br>5665 Eshbaugh Road<br>Dayton, Ohio 45417 | \*<br><br>\* | Case No.<br><br>Judge: |
| Plaintiff, | \* | |
| -vs- | \* | **COMPLAINT WITH<br>JURY DEMAND** |
| MILLERCOORS<br>2525 Wayne Madison Road<br>Trenton, Ohio 45067 | \*<br><br>\* | |
| Defendant. | \* | |

This is an action filed under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and Ohio Revised Code Section 4112.02(A). This Complaint relates to the unlawful employment practices of MillerCoors in Trenton, Ohio. This Complaint is designed to provide appropriate relief to Plaintiff Kim Thompson who was adversely affected by these actions.

## I. JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—3 ("Title VII"), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and O.R.C. 4112.02.

2. Supplemental Jurisdiction of the Court is invoked pursuant to 28 U.S.C. 1367, as all state claims that are related to claims in the action within the Court's original jurisdiction and form part of the same case or controversy

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Ohio, Western Division, at Dayton, Ohio.

### IV. EXHAUSTION OF REMEDIES

4. Plaintiff filed a timely Complaint with the United States Equal Employment Opportunity Commission and received notice of her right to sue on March 24, 2014. All conditions precedent to the institution of this lawsuit have been fulfilled.

### III. PARTIES

5. Plaintiff Kim Thompson, at all times relevant to this Complaint, was a resident of the City of Dayton, in Montgomery County, in the State of Ohio.

6. Defendant MillerCoors is a limited liability company, registered with the Ohio Secretary of State, which is licensed to do business, and which does business, in the City of Trenton, in the County of Butler, in the State of Ohio.

### IV. STATEMENT OF FACTS

7. On May 5, 2008, Defendant MillerCoors hired Plaintiff Kim Thompson to work in its Trenton facility.

8. Plaintiff is an African-American female.

9. Plaintiff's raises and bonuses were dependent on her year-end performance evaluations, which had been consistently high before Defendant's employee Jon Hussey (hereinafter Hussey) was promoted to a supervisory position over Plaintiff, serving as Defendant's Interim Brewery Vice President.

10. Defendant has an anti-harassment policy that states that Defendant will not tolerate discrimination.

11. Defendant's union's anti-harassment policy contains much of the same language that is contained in Defendant's anti-harassment policy and strictly forbids discrimination.

12. Hussey stated to Plaintiff and two other employees that he had come from a lily white town and that he struggles with racial bias.

13. Hussey has made inappropriate statements concerning African Americans and has fostered an environment charged with racial hostility.

14. Hussey specifically targeted Plaintiff with unfair treatment in the workplace, creating an intolerably hostile work environment.

15. Hussey eliminated all African-Americans from Defendant's leadership team and added Caucasians, resulting in an all Caucasian Leadership team.

16. From the time Plaintiff began working at Defendant's company, until the time of her constructive discharge, the working environment in Defendant's company was permeated with racial strife.

17. Non-minority groups banded together using threatening language, bullying and intimidation tactics toward minority employees based on race.

18. Defendant's managers and supervisors participated in ridiculing others based on race, and ratified the harassment perpetrated by employees.

19. Defendant's non-minority employees received special treatment with respect to the terms and conditions of their employment, including positions and job assignments, while minority employees were pushed aside.

20. Defendant's managers and supervisors have refused to take a firm stand in stopping the discriminatory harassment of minorities within its company.

21. In 2009 and 2010, Defendant's corporate office hired a psychologist, Dr. Helen Turnbull to assess the causes of the pervasive racial strife within Defendant's company and to assist with a systemic review and planning to rid Defendant's company of discriminatory practices.

22. Dr. Turnbull concluded that racial strife was becoming rampant in Defendant's company and that an abundance of work and extraordinary measures were needed to stop the escalation of racial tension at the Trenton, Ohio plant.

23. In 2010, Defendant acknowledged that it had been experiencing challenges relating to race, and cited specific examples of discriminatory behavior occurring at Defendant's Trenton, Ohio plant.

24. When confronted with Dr. Turnbull's candor in specifically addressing the racial tension that was prevalent within Defendant's Trenton, Ohio plant, Defendant's local

25. Rather than continuing to work with Dr. Turnbull to develop a solution to rid the Defendant's Trenton, Ohio plant of the racial discrimination, Defendant decided to rid itself of Dr. Turnbull instead, terminating her service based on her unfavorable reports concerning the racially charged atmosphere within Defendant's Trenton, Ohio plant.

26. Corporate initiated an annual engagement survey for the purpose of canvassing the views of employees including Leadership and Diversity and Inclusion. Plaintiff was assigned by Defendant as the sole administrator of the survey for the Trenton Brewery.

27. Defendant's managers and supervisors attempted to force plaintiff to falsely manipulate data within these reports to convey a false appearance to Defendant's corporate office that Defendant was making a true effort to resolve racial strife at the Trenton, Ohio plant.

28. Following one particularly troubling incident in which a noose had been hung at the Defendant's the Shenandoah brewery and various racial incidents at the Defendant's Trenton, Ohio plant, Plaintiff and other African-Americans were advised to stop discussing their concerns regarding racial disparity with Hussey's Manager, Ms. Colleen Reiter, who was the Caucasian Vice President over all Defendant's Breweries.

29. On another occasion, an African American temporary employee was called the N word.

30. On June 26, 2012, Plaintiff applied for a Senior Human Resources Manager position.

31. Once Plaintiff had applied for the Senior Human Resources Manager position, Defendant's managers offered an award pertaining to the successful referral of the candidate who filled the position, which is something they had not previously done.

32. On information and belief, the award was offered in order to carry out Hussey's desire to eliminate Plaintiff from consideration from the position and to fill the position with a pre-chosen Caucasian applicant.

33. In August 2012, during a promotion celebration for Dedra Flournoy, Hussey showed pictures depicting nappy-headed pickaninnies and publicly compared them to the Defendant's African-American manager, Dedra Flournoy and Plaintiff, humiliating Plaintiff.

34. Hussey intentionally attempted to provoke Caucasian co-worker's laughter and ridicule at the expense of African-American employees by the public comparisons of photographs with pickaninny portrayals.

4

35. After Hussey assumed his position as Interim Brewery Vice President, he began flagrantly overloading Plaintiff with additional work responsibilities in an effort to elevate a less qualified Caucasian male.

36. On January 28, 2013, when Hussey presented Plaintiff with her annual performance review, Plaintiff discovered that Hussey had incorporated new elements into her review covering job tasks over which she had no designated responsibility.

37. On several occasions including January 28, 2013, Hussey informed Plaintiff that she would not be hired as a Human Resources Manager and in October, 2012, selected a Caucasian male counterpart to serve in that position.

38. Plaintiff had been performing tasks that Hussey officially transferred to the Caucasian male whom he designated to serve in the role of Senior Human Resources Manager, while still holding Plaintiff accountable to perform the bulk of those duties behind the scenes.

39. In both 2012 and 2013, Plaintiff served as Defendant's Equal Employment Opportunity Officer for the Trenton Brewery.

40. In 2012 and 2013, Plaintiff in her role as Defendant' Equal Opportunity officer, was charged with spearheading Defendant's diversity program that was ostensibly created to remedy the racially hostile work environment.

41. Plaintiff found much of Hussey's on-the-job conduct unethical and biased.

42. Hussey also handpicked and hired a Caucasian male, ignoring proper EEO protocol, by assuring that 'no one would get a specific job other than the handpicked Caucasian male'; compromising Plaintiff's integrity and career with Defendant.

43. In September 2012, Hussey entered a meeting in the Human Resources Conference room and directed Plaintiff to keep her office door and blinds open at all times.

44. Plaintiff indicated that in view of the confidentiality associated with employee concerns, it was impossible for her to conduct daily business effectively with the door open at all times.

45. Hussey provided Plaintiff's equal, Mr. Kevin Dahmer, a Caucasian male, to have an Administrative Assistant, while denying the same accommodation to Plaintiff.

46. Defendant required Plaintiff to provide justification for each minority applicant she hired, while never questioning or requiring justification for Caucasian hires.

47. When a Caucasian male, during working hours, left work unauthorized, stole a company truck, wrecked it, and took it home, Plaintiff was taking appropriate steps to terminate his employment.

48. Hussey called a special meeting to override Plaintiff's decision to terminate the employment of the Caucasian male who stole Defendant's truck and wrecked it.

49. During an annual UAW Golf outing, which Plaintiff attended in support of union activities, Hussey insisted that she ride in his golf cart with him.

50. Hussey, on several occasions, suddenly, and intentionally, slammed on the brakes and make abrupt turns with the vehicle, which was not equipped with safety restraints, resulting injuries to Plaintiff's neck and wrist.

51. In 2013, Defendant's executive and managerial employees insisted that Plaintiff alter company documentation that contained staff comments concerning the staff's views of the handling of racial concerns within Defendant's company.

52. Defendant's management made several attempts to have Plaintiff alter a file that contained negative staff comments concerning Defendant's managers to prevent the information from being elevated to Defendant's corporate office.

53. Plaintiff knew it would have been unlawful and unethical to falsify documents that the managers and supervisors were asking her to alter in her role as Equal Opportunity Officer for the brewery.

54. In her position as Equal Opportunity Officer, Plaintiff believed it was her duty to oppose the prevalent racially discriminatory activity within Defendant's Trenton, Ohio plant, and that altering the documentation she was asked to change would present an ethical conflict in that regard.

55. Defendant's executive and management team persisted with threats to Plaintiff's job, as well as threatening her with legal ramifications for her refusal to alter the survey documents at issue.

56. Based upon Plaintiff's continued refusal to alter or falsify the documentation, Defendant's management directly threatened her career with Defendant.

57. Hussey pressured Plaintiff to quit her employment, advising her that her career with Defendant was finished, as he (Hussey) was going to be promoted to the top position of Business Transformation Leader in the Integrated Supply Chain.

58. Because the Integrated Supply Chain controls the downsizing of Defendant's breweries, Plaintiff believed that Hussey intended to carry out his threats concerning her career.

59. Hussey unilaterally added elements to Plaintiff's year-end performance review that had never been present in previous reviews.

60. On information and belief, Hussey altered the requirements of the performance review to prevent Plaintiff from receiving her pay raise and bonus, as well as to effectively end Plaintiff's career with Defendant, and to damage her reputation.

61. The bullying, intimidation, and harassment that were pervasive at Defendant's Trenton, Ohio plant, as well as Defendant's supervisor's and manager's direct threats to her career, as well as their other discriminatory actions, resulted in intolerable pressure, and eventually, Plaintiff's illness.

62. On January 28, 2013, Plaintiff was constructively discharged.

63. Plaintiff would not have left her position with Defendant abruptly if it had not been for the racially charged, utterly intolerable and extreme circumstances under which she was forced to work.

## COUNT I
## RACIAL DISCRIMINATION (DISPARATE TREATMENT)
[Racial Discrimination (Disparate Treatment) pursuant to Ohio Revised Code Section 4112.02 (A), et. seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—5(f)(1); and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a]

64. All paragraphs above are incorporated herein as if fully rewritten.

65. Plaintiff, as an African-American citizen, is the member of a protected class.

66. Plaintiff was qualified for her position.

67. Plaintiff was subjected to an adverse job action through Defendants' racial harassment, failure to promote, unfair denial of pay raises and bonuses, unfair evaluation, and constructive termination of her employment.

68. Defendants' have subjected Plaintiff to less favorable treatment in the terms and conditions of her employment than non-minority employees have received based upon her race.

69. Defendants treated similarly-situated non-minority employees more favorably than Plaintiff, as detailed within the body this Complaint.

70. Plaintiff was subjected to more severe and punitive performance requirements and evaluation than Defendants' similarly situated non-minority employees.

71. Discrimination directed toward Plaintiff was motivated by, and based upon, on her race.

72. The discrimination directed toward Plaintiff was conscious, purposeful, intentional, malicious, or sufficiently reckless to warrant an award of punitive damages.

73. Defendant was aware of the severe, discriminatory actions to which Plaintiff was subjected by managerial, supervisory, and other employees who were acting within the course and scope of their employment with Defendant when the discrimination occurred.

74. Defendant independently subjected Plaintiff to severe, discriminatory actions by ratifying its managerial and supervisory employees', and other employees' discriminatory racial misconduct.

75. Defendants were aware, or should have been aware, of the racial discrimination Plaintiff suffered, yet failed to take immediate and appropriate corrective action.

76. Defendants are charged with knowledge of the discriminatory conduct of their employees, as it was committed by Defendants' managers and supervisors.

77. The discrimination to which Plaintiff was subjected was sufficiently severe and pervasive to alter the conditions of her employment and to create an abusive, hostile working environment.

78. As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and damages.

## COUNT II
## RACIAL DISCRIMINATION (HOSTILE WORK ENVIRONMENT)
**(Pursuant to Ohio Revised Code Section 4112.02 (A), et. seq.; Title VII of the Civil Rights Act of 1964, as amended, in 42 U.S.C. § 2000e—5(f)(1).**

79. Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs as if fully rewritten herein.

80. Defendant inflicted intentional, severe and pervasive racial harassment upon Plaintiff.

81. The racial harassment, and resulting hostile work environment, occurred at Defendant's Trenton, Ohio plant.

82. Defendant's supervisors and managers who perpetrated the racial harassment had the authority to initiate discipline against Plaintiff and to take other adverse employment

83. Defendant's supervisors and managers were able to subject Plaintiff to a hostile working environment because of the authority, or apparent authority, Defendant placed in them, and through Defendant designating them as management level employees.

84. At all times relevant to this Complaint, Defendant's supervisors and managers were acting within the scope of their authority as supervisors and manager for Defendant

85. The discrimination directed toward Plaintiff was conscious, purposeful, intentional, malicious, or sufficiently reckless to warrant an award of punitive damages.

86. Defendant's supervisors' and managers' unwelcome racially discriminating, harassing conduct was based on Plaintiff's race.

87. The atmosphere at Defendant's Trenton, Ohio plant was permeated by racial strife, hostility and other discriminatory conduct that was perpetrated and ratified by Defendant's supervisors, managers and other employees.

88. The racially hostile environment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

89. Defendant's managers', supervisors', and employee's discriminatory conduct actually did negatively affect the terms, conditions and privileges of Plaintiff's work environment, creating a hostile, abusive and offensive work environment.

90. Plaintiff was denied promotions, pay raises, and bonuses, and was eventually constructively terminated from her employment at Defendant's Trenton, Ohio plant.

91. The harassment at Defendant's Trenton, Ohio plant was sufficient to detrimentally affect a reasonable similarly situated female.

92. Defendant knew about the hostile working environment, or should have known, and failed to take appropriate preventative or corrective action to halt the racial harassment and hostile working environment.

93. Defendant's supervisors', managers' and employees' unwelcome, repeated racial discrimination was committed maliciously, callously, intentionally, and recklessly.

94. Plaintiff rejected Defendant's supervisors', managers' and employee's unwelcomed racially discriminatory behavior and made it clear to them that this behavior was unwelcome.

95. As a direct and proximate result of Defendants' conduct Plaintiff has suffered damages including, but not necessarily limited to, severe emotional distress and anguish, damage to her reputation, and loss of wages and benefits.

# COUNT III
# RETALIATION

**(Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—3 ("Title VII");  Section 102 of the Civil Rights Act of 1991; R.C. 4112.02(J), R.C. 4112.02, et. seq. )**

96. Each of the foregoing paragraphs above is incorporated herein as if fully rewritten.

97. Defendant had statutory duties that obligated Defendant not to discriminate in any manner against Plaintiff because of her opposition to any unlawful discriminatory practice.

98. Plaintiff participated in protected activities by opposing discrimination through her refusal to alter Equal Employment Opportunity-relate documentation that would have exposed Defendant's supervisory and managerial employees' racial discrimination, mishandling of discrimination claims, and fostering of a hostile working environment.

99. Defendant knew about Plaintiff's exercise of protected activities as stated in paragraph 99, directly above, and was charged with knowledge of it as it was committed by Defendant's supervisory and managerial employees.

100. Defendant took materially adverse employment actions against Plaintiff including, but not necessarily limited to, discriminating against her with respect to promotions, performance evaluation, pay raises, bonuses, and eventually constructively terminated her employment in retaliation for her participation in legally protected activities.

101. The retaliatory harassment to which Defendant subjected Plaintiff was severe and pervasive.

102. Defendant's supervisors', managers' and employees' unwelcome retaliatory discrimination against Plaintiff was committed maliciously, callously, intentionally, and recklessly.

103. There was a causal connection between Defendant's retaliatory actions and Plaintiff's protected activity.

104. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered injury and damages.

## COUNT IV
### (Negligent Hiring and Retention)

105. Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs as if they were fully re as if fully rewritten herein.

106. The offending managers and supervisors who ratified and perpetrated racial discrimination within the workplace and against Plaintiff were employed by Defendant.

107. The supervisory and managerial employees within Defendant's plant who perpetrated racial discrimination within the workplace and against Plaintiff had a history and pattern of committing racial discrimination.

108. Defendants knew, or should have known, of Defendant's supervisory and managerial employees' histories of racial discrimination, but hired and retained them anyway.

109. Defendant's managerial and supervisory employees racially harassed Defendant's employees, including Plaintiff, and created a hostile work environment.

110. Defendant's knew, or should have known, about its managerial and supervisory employee's unwelcome racial harassment against Plaintiff and its other employees, and their creation of a hostile work environment.

111. Defendants were negligent in hiring and/or retaining the supervisory and managerial employees who perpetrated the racial discrimination and ratification of discriminatory conduct by employees.

112. As a direct and proximate cause of Defendants' negligence in hiring and/or retaining Defendant's supervisors and managers who perpetrated and ratified racial discrimination, Plaintiff has suffered injury and damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants in an amount exceeding one hundred thousand dollars together with pre-judgment interest, interest, costs herein expended, compensatory damages, punitive damages, reasonable attorney fees, and such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ David E. Stenson
DAVID E. STENSON #0042671
118 West First Street – Suite 316
Dayton, Ohio 45402
(937) 225-3981
Attorney for Plaintiff Kim Thompson

## JURY DEMAND

Plaintiff demands a jury trial on issues within his Complaint that may be tried by a jury.

/s/ David E. Stenson
DAVID E. STENSON
Attorney for Plaintiff Kim Thompson